NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TERN BAY COMMUNITY                      )
DEVELOPMENT DISTRICT,                    )
                                        )
        Appellant,                       )
                                        )
v.                                      )        Case No. 2D13-4436
                                        )
RYANGOLF CORPORATION,                   )
                                        )
        Appellee.                        )
_____ )

Opinion filed December 31, 2014.

Appeal from the Circuit Court for Charlotte
County; Joseph G. Foster, Judge.

Scott D. Clark and Mitchell E. Albaugh of
Clark, Albaugh & Rentz, LLP, Winter Park,
for Appellant.

Paul Woodson of Boyd & Jenerette, P.A.,
Coconut Creek, for Appellee.


NORTHCUTT, Judge.

        Tern Bay Community Development District (CDD) challenges a judgment

entered after a jury awarded damages to Ryangolf Corporation on its breach of contract

claim.  We reverse a portion of the damages award, and we also direct the court to

strike the provision that purports to allow Ryangolf to execute on CDD's property. We affirm the judgment in all other respects without further discussion.

Two entities were involved in developing Tern Bay, a project that was envisioned as a residential community with a golf course and other amenities. Tern Bay, LLC (LLC), a private company, was responsible for creating the golf course, pools, tennis courts, clubhouses, private roadways, fountains, hardscape, and security. CDD is a community development district created by the Florida Land and Water Adjudicatory Commission pursuant to chapter 190, Florida Statutes (2004). It was in charge of developing the Tern Bay project's infrastructure, i.e., public roadways, water management, wetlands, utilities, landscape, and professional services. In 2004, both CDD and LLC contracted with Ryangolf to construct the improvements to the property.

The development was never completed. In December 2007, Ryangolf sued both CDD and LLC for breach of contract, alleging that they had failed to pay in excess of $2,000,000 owed for work done on the property. Ryangolf also filed a claim of lien against the property and sought to foreclose that lien against LLC. It eventually dropped LLC from the lawsuit in 2010, presumably because that company was insolvent. Meanwhile, in 2008 CDD sued LLC for amounts it was owed and to foreclose LLC's interest in the property, joining all lenders and contractors that had liens against the property. The court entered a judgment of foreclosure in CDD's favor in 2010.

Ryangolf's suit was put on hold while CDD's action against LLC was pending, but it resumed when the foreclosure action was completed. By the time the case went to the jury, Ryangolf had honed its request for money damages to

$389,881.27, comprising $109,061.50 for additional work performed on CDD's behalf and $280,819.77 for money allegedly owed by CDD for invoices that had been mistakenly charged to LLC due to coding errors. The jurors awarded the exact amount requested. We affirm without comment the damages awarded for additional work. We reverse the award for $280,819.77.

The evidence at trial disclosed that during the course of construction, Ryangolf periodically submitted itemized payment applications to the project manager. For each item in an application, the manager determined whether CDD or LLC was responsible for payment and charged the entities accordingly. After thirteen invoices were paid, the property manager requested that Ryangolf begin submitting separate invoices—one for work done for CDD, another for work done for LLC. No one disputes that the first thirteen applications were paid in full. At trial, an auditor established that the property manager had miscoded some requests in applications five through eight (or ten—the auditor's testimony was somewhat unclear). The result of these coding errors was that LLC paid Ryangolf for work that should have been billed to CDD, in the amount of $280,819.77.

Having been paid for these items of work, albeit by the wrong entity, Ryangolf was not entitled to recover for them again in its lawsuit against CDD. If LLC paid Ryangolf for services rendered on behalf of CDD, then LLC, not Ryangolf, had a claim against CDD. LLC's payment of CDD's debt to Ryangolf essentially resulted in an equitable subrogation in which "the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and

-3-

priorities of the original creditor." See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999). Compensating Ryangolf for the same work from both LLC and CDD resulted in a double payment. We are mindful of Ryangolf's assertion that LLC failed to pay far more than this amount on its contract. But the fact that Ryangolf cannot collect from LLC because it is insolvent could not justify an award of damages for money it has already been paid. Accordingly, we reverse the judgment to the extent that it awards Ryangolf compensation from CDD in the amount of $280,819.77.

We also reverse the portion of the judgment that permits Ryangolf to execute its judgment against CDD's property. Section 190.044 provides that all property owned by a community development district "shall be exempt from levy and stay by virtue of an execution, and no execution or other judicial process shall issue against such property." Accordingly, the provision in the judgment stating "let execution issue" is erroneous and must be stricken.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.


ALTENBERND and WALLACE, JJ., Concur.

-4-